UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| iTALENT CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RAJU KOTHA, et al.,<br><br>　　　　Defendants. | Case No.  25-cv-06365-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF No. 11-3] |

Before the Court is Plaintiff iTalent Corporation's ("Plaintiff" or "itD") motion for a Temporary Restraining Order ("TRO") against Defendants Caleb Hernandez ("Hernandez"), Fred Walters ("Walters"), Raju Kotha, and Priya Kotha (collectively, "Defendants"). ECF No. 11-3 ("Mot."). Plaintiff alleges that Defendants are engaged in a multi-year, ongoing conspiracy to wrest control of itD's Indian office, including by siphoning itD's funds, misappropriating itD's trade secrets, interfering with itD's client relationships, and stealing itD's web domains. Plaintiff seeks to enjoin Defendants from taking any steps in furtherance of this alleged scheme and also seeks to direct Defendants to restore the status quo ante. Defendants filed oppositions, ECF Nos. 27, 28, 29, and Plaintiff submitted replies, ECF Nos. 37, 38, 39. The Court held a hearing on the motion on September 16, 2025. ECF No. 45.

For the reasons stated on the record at the hearing and explained below, the Court DENIES Plaintiff's TRO application WITHOUT PREJUDICE to file a motion for a preliminary injunction (ECF No. 11).

**I.　BACKGROUND**

　　**A. Procedural History**

This action was initially filed on July 29, 2025. ECF No. 1. The suit was brought only

against Raju Kotha. *Id.* ¶ 3. On August 29, itD submitted its First Amended Complaint ("FAC"), which added Hernandez, Walters, and Priya Kotha as Defendants. ECF No. 10 ¶ 11–13. Although summons had not been returned executed as to Raju Kotha, the complaint makes allegations about his conduct after he had been served with the initial complaint, including his "admitt[ing] that he had indeed been working with Hernandez and Walters." *Id.* ¶¶ 60, 62.

itD brings fifteen causes of action: (1) Civil RICO Under 18 U.S.C. § 1962(c); (2) Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; (3) Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (4) Violation of the California Uniform Trade Secrets Act, Cal. Civil Code § 3426 *et seq*; (5) Breach of Contract; (6) Aiding and Abetting Breach of Contract; (7) Violation of California Penal Code § 502(c) *et seq.*; (8) Violation of California Penal Code § 496(a); (9) Trespass to Chattels; (10) Breach of Duty of Loyalty; (11) Aiding and Abetting Breach of Duty of Loyalty; (12) Breach of Fiduciary Duty; (13) Aiding and Abetting Breach of Fiduciary Duty; (14) Tortious Interference with a Business Relationship; and (15) Conversion. *See* FAC ¶¶ 65–170.

**B. Facts**

itD is a California corporation that offers technology services to clients. ECF No. 11-5, Declaration of Renee La Londe ("La Londe Decl.") ¶ 4. iTalent Application Pvt. Ltd., ("iTalent Application") was formed in 2014. *Id.* ¶ 6. Although it is a distinct entity, iTalent Application is, in practice, itD's India office. *Id.* All of its revenue comes from pass-through billing to itD. *Id.*

In 2002, itD's predecessor was founded by CEO, board member, and majority shareholder Renee La Londe. *Id.* ¶ 2. In 2002, itD hired Hernandez as the Finance and Operations Manager. *Id.* ¶ 8. When he joined the company, he signed a contract that includes a confidentiality clause. *Id.* In 2005, he began to refer to himself as CFO. *Id.* ¶ 9. By 2007, Hernandez was replaced in practice as CFO but kept a leadership role in the company and his title. *Id.* ¶¶ 9–10. He is still a director of itD. *Id.* ¶ 11.

itD hired Walters as general partner in 2007. *Id.* ¶ 12. He likewise signed an employment agreement with a confidentiality clause. *Id.* Walters was promoted to the position of Chief Innovation Officer in 2016. *Id.* ¶ 13.

1    Raju Kotha was hired as the Technical Manager of iTalent Application in 2014. *Id.* ¶ 14.
2    Although everyone who is hired to work at itD signs an employment agreement with a
3    confidentiality clause, Raju Kotha's personnel file—which was kept only in paper copy—is
4    missing. *Id.* ¶ 14; ECF No. 11–20, Declaration of Cecilia Landeros ("Landeros Decl.") ¶ 7. In
5    2015, itD also hired Priya Kotha as iTalent Application's Finance and Operations Manager. La
6    Londe Decl. ¶ 15.

7    The facts underlying this lawsuit are complex and disputed. But at the core, itD alleges
8    that, over the past several years, Defendants "concocted a scheme to spin off iTalent Application
9    as a separate company and competitor to itD." *Id.* ¶ 16.

### 1. Financial Investigation and Hernandez's Conduct

11   itD alleges that iTalent Application falsified up to 10 employees to siphon funds from itD
12   under the guise of payroll. *Id.* ¶ 17. itD uncovered this discrepancy in March 2025 after Tom
13   Wilkinson, itD's current CFO, noted itD's earnings were down by $2 million. *Id.* ¶¶ 18–22; ECF
14   No. 11-19, Declaration of Tom Wilkinson ("Wilkinson Decl.") ¶¶ 4–7. itD eventually discovered
15   $750,000 in cash sitting in iTalent Application's bank account along with three open invoices for
16   roughly $450,000 for which Hernandez, Walters, and Raju Kotha were "pushing payment."
17   Wilkinson Decl. ¶ 8. For his part, Hernandez disclaims any knowledge of fictitious employees
18   and points out that no fake employee has been identified by itD. ECF No. 27-1, Declaration of
19   Caleb Hernandez ("Hernandez Decl.") ¶ 4.

20   itD suggests that Hernandez "became heated" during a confrontation with La Londe over
21   the ongoing financial investigation and "vehemently urged" her not to come to iTalent Application
22   in India to oversee an audit by KPMG. La Londe Decl. ¶¶ 20, 22. Hernandez disputes this
23   account, explaining that he was never "heated," but was surprised by and concerned about some of
24   La Londe's conduct. Hernandez Decl. ¶¶ 5–7.

25   On May 22, 2025, three days after La Londe returned from her trip to oversee the audit,
26   Hernandez resigned. *Id.* ¶ 23. Before his last day (June 23, 2025), he allegedly "dragged his feet"
27   with respect to the transition, including failing to supply "requested bookkeeping data." *Id.*
28   According to La Londe, Hernandez repeatedly attempted to login to his "NetSuite" account after

3

his last day, a system that houses itD's client lists. *Id.* ¶ 43. La Londe discovered, after Hernandez left the company, that his email sent folder had been emptied and his email inbox was missing emails from a period of several years. *Id.* ¶ 25, Ex. C. Priya Kotha ignored requests to recover Hernandez's missing emails. *Id.* ¶ 26, Ex. D.

Hernandez tells a different story. He explains that he stayed on "at itD's request" and performed tasks until July 9, 2025. Hernandez Decl. ¶ 9. He explains that he accessed NetSuite only once and suggests the other logins were not caused by his actions. *Id.* at ¶ 10. He says that he did not wipe his "entire email box for years 2023 through 2025," but instead deleted only sent items, because many were personal. *Id.* ¶ 11. On July 18, 2025, he returned his laptop. *Id.* ¶ 9.

### 2. Walters's Conduct

According to itD, Walters sought to poach itD's business and potential partners. La Londe Decl. ¶¶ 34–41. For example, Walters entered into a Partnership Agreement in 2020 with a company, "Interfered Partner 1" on behalf of itD. *Id.* ¶ 34. But Walters kept this business relationship a secret from his colleagues, even when it should have come up naturally in context. *Id.* ¶¶ 34–35; ECF No. 11-18, Declaration of Tyson Nunemacher ("Nunemacher Decl.") ¶¶ 2–7. Before he left the company, Walters forwarded contracts with Interfered Partner 1 to his personal email address. La Londe Decl. ¶ 36, Ex. G. There is evidence that Walters also interfered with two other potential business partners. *Id.* ¶¶ 38–41. And after he left the company, his email had been mostly cleared out for stretches of years. *Id.* ¶ 27, Ex. E. He also attempted to wipe his work laptop before returning it. *Id.* ¶ 29. Walters left itD on July 18, 2025. ECF No. 29-1, Declaration of Fred Walters ("Walters Decl.") ¶ 4. On August 21, 2025, he signed an affidavit confirming that he had returned all of itD's confidential material and destroyed any duplicates or copies. *Id.* ¶ 5, Ex. A.

### 3. Raju Kotha and Priya Kotha's Conduct

In June and July of 2025, Raju Kotha used La Londe's login credentials to the web domain provider GoDaddy, Inc. ("GoDaddy") and other of itD and La Londe's accounts. La Londe Decl. ¶ 30. Raju Kotha transferred several of itD's key web domains to himself and seized ownership of dozens of other vendor accounts. *Id.* ¶¶ 30–32. The steps of this conduct were enumerated in

detail in a series of emails sent from an employee of iTalent Application to Priya Kotha, suggesting her involvement with and supervision of the conduct. *See id.* Ex. F. And a forensic investigator's audit revealed that Raju Kotha and Priya Kotha "engaged in mutual privilege escalation" by granting each other administrative roles and privileges in key itD accounts, which amounts to "[s]trong evidence of a deliberate circumvention of security controls." ECF No. 11-17, Declaration of Chris Canada ("Canada Decl.") ¶¶ 4–7. The forensic investigation also revealed evidence consistent with Raju Kotha's repeatedly breaking into La Londe's email account, accessing Hernandez's mailbox to perform mass email deletions, and purging his own emails. *Id.* ¶¶ 8–13. Priya Kotha's activity was also consistent with her purging her emails. *Id.* ¶ 13.

On July 29, itD filed its initial complaint against Raju Kotha. ECF No. 1. Although Raju Kotha has "feigned cooperation" since being served with the complaint, including claiming "to have returned all stolen systems," there have been issues with various of itD's systems as recently as August 17, 2025. La Londe Decl. ¶ 46. Raju Kotha also "suggested through intermediaries that he would honor his commitment to pay iTalent Application's employees if itD dismissed and waived all claims against him." *Id.* ¶ 47.

### 4. Walters and Hernandez's Visit to India

itD alleges in the Amended Complaint that Raju Kotha admitted to La Londe and itD upon being served with the complaint that his conduct was part of a "larger plan including Hernandez and Walters." FAC ¶ 60.

La Londe "instructed" Raju Kotha not to allow Hernandez and Walters into the office of iTalent Application after they had resigned. La Londe Decl. ¶ 24. But upon resignation, Hernandez and Walters both flew to India "to thank the employees that [they] had worked with for the past 13 years." Hernandez Decl. ¶ 12. Hernandez explains that he did not engage in any wrongdoing while he was visiting iTalent Application and went only to say goodbye to longtime colleagues. *Id.* But itD provides evidence that Walters and Hernandez were in iTalent Application's office working. *See, e.g.*, La Londe Decl. Ex. F at 5 (mentioning, in an email to Priya Kotha, "Team Meeting with Fred [Walters] & Caleb [Hernandez]").

5

### 5. The TRO Application

On September 2, 2025, itD filed its TRO application on the basis of six claims: (1) violation of the Computer Fraud and Abuse Act ("CFAA"); (2) violations of the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secret Act ("CUTSA"); (3) breach of contract; (4) trespass to chattels; (5) breach of fiduciary duty; and (6) tortious interference with prospective economic advantage. Mot. at 4–5. The breach of contract claim is brought only as to Hernandez and Walters, the breach of fiduciary duty claim is brought only against Hernandez, and the rest of the claims are brought against all four Defendants. *Id.*

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (alteration in original) (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

##### 1. CFAA and Trespass to Chattels

The CFAA prohibits intentionally accessing a computer "without authorization" or by "exceed[ing] authorized access" to obtain information from a protected computer. *See* 18 U.S.C. § 1030(a)(2)(C). As explained on the record at the hearing, the Court finds itD is likely to succeed on the merits of its CFAA claim as to Raju Kotha and Priya Kotha. By breaking into La Londe's email and seizing control of itD's GoDaddy domains and other key systems, Raju Kotha and Priya Kotha plainly exceeded the scope of their authorized access to itD's computers with intent to defraud to obtain things of value. Canada Decl. ¶¶ 4–13; La Londe Decl. ¶¶ 30–33.

Although the CFAA is alleged as a conspiracy, FAC ¶ 81, itD has not submitted evidence that meets the elements of conspiracy. Accordingly, the Court does not find that the record supports a likelihood of success on the merits of the CFAA claim with respect to Hernandez and Walters, because the evidence does not support their exceeding the scope of their authorized access to itD's computers.

The same evidence supports a likelihood of success on the merits of the Trespass to Chattels claim as to Raju Kotha and Priya Kotha. To succeed on a claim for trespass to chattels under California law, the plaintiff must show that "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *Margolis v. Apple Inc.*, 743 F.Supp.3d 1124, 1135 (N.D. Cal. 2024) (quoting *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000)). Here, itD has shown that Raju Kotha and Priya Kotha seized control of various of its key systems, which led to, at minimum, a loss of La Londe's time and energy. Canada Decl. ¶¶ 4–13; La Londe Decl. ¶¶ 30–33. The Trespass to Chattels claim is likewise alleged as a conspiracy, FAC ¶ 137, and is insufficient as to Walters and Hernandez for the same reason as is the CFAA claim.

##### 2. CUTSA and DTSA

The Court now turns to itD's claims for misappropriation of trade secrets under the Defend

1  Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets
2  Act ("CUTSA"), Civil Code § 3426 *et seq.* itD bases its trade secrets claims on the alleged
3  misappropriation of confidential client lists and customer contracts. Mot. at 18.
4        Courts often analyze claims under the Federal Defend Trade Secrets Act and the California
5  Uniform Trade Secrets Act together, because "the elements are substantially similar." *InteliClear,*
6  *LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). To succeed on a claim for
7  misappropriation of trade secrets under either act, a plaintiff must prove: "(1) that the plaintiff
8  possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the
9  misappropriation caused or threatened damage to the plaintiff." *Nat'l Specialty Pharmacy, LLC*
10 *v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (quoting *InteliClear*, 978 F.3d at 657–58)
11 (discussing DTSA); *CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*, 160
12 Cal. App. 4th 288, 297 (2008) ("Under the UTSA, a prima facie claim for misappropriation of
13 trade secrets 'requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the
14 defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3)
15 the defendant's actions damaged the plaintiff.'").
16       Here, the Court finds that itD is likely to succeed on the merits of its trade secrets claims
17 with respect to Walters, because he emailed himself confidential client contracts before resigning.
18 La Londe Decl. ¶ 36, Ex. G. The Court agrees with Plaintiff that the contract between itD and
19 Interfered Partner 1 qualifies as a trade secret. *See Xsolla (USA), Inc. v. Aghanim Inc.*, No. 2:24-
20 cv-02116-ODW, 2024 WL 4139615, at *7 (C.D. Cal. Sept. 10, 2024) (finding that information
21 regarding "confidential contracts with customers" qualified as a trade secret). That Walters took it
22 is evidence of misappropriation that threatens harm to itD.
23       The Court acknowledges that customer lists sometimes qualify as trade secrets. *See, e.g.*,
24 *id.* Here, there is no evidence in the record of the makeup of the allegedly misappropriated
25 customer lists. So the Court cannot evaluate whether a trade secret is at issue. Moreover, that
26 Hernandez repeatedly attempted to login to his NetSuite account, the home of itD's client lists,
27 does not provide sufficient evidence of *misappropriation* of trade secrets. *Id.* ¶ 43. This evidence
28 is also disputed by Hernandez, who reports that he accessed NetSuite only once to look at his own

8

1  personal information.  Hernandez Decl. ¶ 9.  Finally, the Court does not find that the record

2  supports itD's trade secrets claims with respect to Raju Kotha and Priya Kotha.

3  Accordingly, the Court finds that itD has shown there is a serious question going to the

4  merits of itD's DTSA and CUTSA claims with respect to Walters.

### 3.  Breach of Fiduciary Duty

itD argues that because Hernandez is a director of itD, he owed itD fiduciary duties and violated them by participation in the scheme to seize control of iTalent Application and spin it off as a competitor of itD.  Mot. at 22–23.

To succeed on the merits of a breach of fiduciary duty claim, a plaintiff must show (1) the existence of a fiduciary duty, (2) its breach, and (3) damages proximately caused by the breach. *7EDU Impact Acad. Inc. v. You*, 760 F.Supp.3d 981, 1003 (N.D. Cal. 2024) (quoting *Les Fields/C.C.H.I. Ins. Servs. v. Hines*, No. 15-cv-03728-MEJ, 2016 WL 6873459, at *14 (N.D. Cal. Nov. 22, 2016)).  Corporate directors generally owe fiduciary duties to the company.  *Id.* at 1004.

Here, it is undisputed that Hernandez is a director of itD.  La Londe Decl. ¶ 11; Hernandez Decl. ¶ 1.  Accordingly, he owes the company fiduciary duties.  And the evidence of Hernandez's participation in the alleged conspiracy, which the Court discusses at length above, shows serious questions going to the merits of the claim.

### 4.  Tortious Interference with Prospective Economic Advantage

itD argues it is likely to prevail on the merits of its claim for tortious interference with prospective economic advantage, which it brings against all four Defendants.  Mot. at 23–26.  itD argues that Walters's interference with actual and potential of itD's partners amounts to tortious interference.  In response, Walters argues that he executed a sworn affidavit confirming that he returned or destroyed all of itD's confidential material.  ECF No. 29 ("Walters Opp.") at 5.

To prevail on a claim of tortious interference with an economic relationship, itD must show "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused

by the acts of the defendant." *TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 689 (9th Cir. 1990).

As a threshold matter, the Court notes that the sole evidence supporting this claim pertains to Walters.[1] He secretly entered into a relationship with Interfered Partner 1 and apparently sought to move that relationship away from itD. La Londe Decl. ¶¶ 34–36. The evidence supports the allegations that Walters sought to interfere with two other potential partners of itD. *Id.* ¶¶ 38, 40. And itD has shown that these partnerships were potentially quite valuable. *Id.* ¶ 37, 39, 41. The Court notes that itD did not submit evidence of actual economic loss as a result of this interference, only potential loss. Nor did itD submit evidence of Plaintiff's communications with clients confirming its claims.

The Court further observes that although Walters signed a sworn affidavit attesting that he has returned or destroyed all of itD's confidential material in his possession as of August 21, 2025, he left itD on July 18, 2025. Walters Decl. ¶¶ 4–5. Walters offers no evidence of what happened in the intervening period of more than a month.

Accordingly, the Court finds that itD has shown a serious question going to the merits of its tortious interference claim.

### 5. Breach of Contract

itD argues that Hernandez and Walters breached their Employment Contracts with itD because they both signed agreements to use itD's information only to the benefit of itD. Mot. at 20. Hernandez and Walters do not dispute that they signed Employment Agreements with confidentiality clauses. La Londe Decl. ¶¶ 8, 12. In light of the evidence of their conduct, discussed at length above, the Court finds that there is a serious question going to the merits of whether Hernandez and Walters are in breach of their contractual obligations to itD.

### B. Irreparable Harm

The Court turns next to whether itD is likely to suffer irreparable harm absent a Temporary Restraining Order. itD argues that because its confidential information has been misappropriated

---

[1] Although the tortious interference claim is alleged as a conspiracy, FAC ¶ 162, as explained above, itD has not submitted evidence that meets the elements of conspiracy.

and Defendants are "actively engaged in their conspiracy," it will suffer irreparable harm. Mot. at 26. Defendants argue that the delay between itD's filing its initial complaint and submitting its TRO application undermines the claim that the situation merits emergency relief. ECF No. 27 ("Hernandez Opp.") at 5; Walters Opp. at 4–5.

The Court notes that the gap in time between itD's filing of the initial complaint and submitting the TRO application is explained by the need to conduct a thorough investigation before asking the Court for relief. However, the Court finds that itD has not shown a likelihood of irreparable harm, because it has effectively cut off avenues for further harm. There is no evidence before the Court that Defendants have ongoing access to itD's systems or domains. Nor has itD submitted evidence of any ongoing interference with current or potential partners.

Because the Court finds that itD has not shown a likelihood of irreparable harm absent preliminary relief, it need not conduct an analysis of the remaining *Winter* factors. The Court concludes that itD has not met its high burden to show that a TRO should issue.

**C. Service of Process and Personal Jurisdiction**

Raju Kotha and Priya Kotha object on the grounds that (1) service of process was improper, and (2) the Court does not have personal jurisdiction over them. ECF No. 28 ("Kotha Opp.") at 2. As stated on the record at the hearing, the Court notes that it authorized email service of the TRO application and observes that there are indicia of personal jurisdiction as to Raju Kotha and Priya Kotha. Because the Court is not issuing a temporary restraining order, the Court will defer any ruling on these issues until Defendants' Motion to Dismiss is heard.

**IV.   ORDER**

itD has submitted significant evidence of serious wrongdoing by each of the Defendants. Denial of temporary relief may be a result of the aggressive and thorough action of itD and its Counsel to staunch the flow of its proprietary and trade secret information into the hands of wrongdoers. It is only because itD failed to show ongoing harm that this TRO is denied.

For the foregoing reasons, Plaintiff's Application for a Temporary Restraining Order is DENIED WITHOUT PREJUDICE to refile a motion for preliminary injunction.

Dated:  September 19, 2025

_____
BETH LABSON FREEMAN
United States District Judge